# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0154-24

ZACHARY MAGANA,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

Submitted November 20, 2025 – Decided December 15, 2025

Before Judges Marczyk and Puglisi.

On appeal from the New Jersey State Parole Board.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Samuel C. Carrigan, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Handel T. Destinvil, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Zachary Magana appeals from the July 31, 2024 final agency decision of the New Jersey Parole Board (Board) revoking his parole supervision for life (PSL) status, N.J.S.A. 2C:43-6.4, and imposing a sixteen-month term of incarceration. We affirm.

I.

A. Background

In 2008, appellant was convicted of one count of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(3)(b), and sentenced in Monmouth County to a five-year term of incarceration. The court also imposed PSL as part of his sentence, which included the condition he "obey all laws and ordinances." In 2010, appellant was granted an interstate compact transfer of his parole supervision from New Jersey to Utah.

In November 2017, appellant was arrested in Utah for sexual exploitation of a minor. He was subsequently indicted and later pled guilty to one count of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) and § 2252A(b)(2), in the United States District Court for the District of Utah. On November 13, 2018, the district court sentenced appellant to an eighty-four-month term of incarceration in federal prison and supervised release for life. The federal court ordered his sentence "to run concurrent with the [p]arole

A-0154-24

[v]iolation in New Jersey." On November 16, 2018, the Board issued a parole warrant for appellant's arrest—to the Weber County Sheriff's Office in Utah, where he was in custody—because his federal conviction violated the terms of his PSL.

Appellant served most of his federal sentence at the Federal Correctional Institution (FCI) in Texas. On March 8, 2019, the FCI confirmed it received and lodged the Board's detainer and parole violation warrant. On November 2, 2023, appellant completed his sentence, was released from federal custody, and was extradited back to New Jersey pursuant to the November 2018 parole warrant. On November 6, 2023, he was served with notice of a final revocation hearing.

B.    The Parole Revocation Hearing and Hearing Summary

The parole revocation hearing was conducted in February 2024. A parole officer testified on behalf of the Division of Parole. Appellant pled guilty to violating his PSL based on his November 2018 federal conviction. However, he argued he should receive prior service credits for the time between the New Jersey detainer and warrant in November 2018 to the conclusion of his federal sentence in November 2023, emphasizing the federal court's order stated his

3

eighty-four-month federal sentence was "to run concurrent with the [p]arole [v]iolation in New Jersey."

Appellant contended the Board failed to process his parole violation in a timely manner, thereby not giving effect to the federal court's order that his sentences were to run concurrently. He asked the parole officer if there was anything that prevented the Board from conducting a remote revocation hearing in 2018 or 2019, to which the officer responded he was "not sure . . . what [the Board's] requirements would be in order for that to have happened. That would be something more for a [s]upervisor to answer." The parole officer also testified he believed the Board would have received a copy of the federal court's judgment ordering appellant's sentence be served concurrently with the PSL violation, as it would have been included in the evidence submitted to obtain a warrant. However, he noted appellant's supervision reports contained no reference to the concurrent nature of the federal court's sentencing order. The officer explained the Board took no action on appellant's parole file other than ensuring he was still incarcerated.

Appellant testified about the complications the outstanding parole warrant in New Jersey caused him, explaining it disqualified him from being eligible for release to a halfway house six months sooner. He asserted he "spent four years

4

. . . writing Monmouth County, writing the judges, writing back to the courts in Utah[,] telling them what the situation was," with "no answers." However, appellant acknowledged the Monmouth County court responded to his letter requesting representation, advising him to file a writ and seek representation. He explained he did not communicate with his parole officer in New Jersey because his supervising office was in Utah.

The hearing officer noted in her summary that although appellant presented a "compelling argument," "the application of credits and the execution of that calculation [was] outside of the scope of t[he] hearing and beyond [her] authority" as a hearing officer. She determined appellant had not demonstrated good cause by clear and convincing evidence "as to why [his] supervision status sh[ould] not be revoked" and recommended the Board revoke his PSL status and direct a sixteen-month sentence.

C.    The Board Panel Decision

On March 20, 2024, a two-member Board panel issued its decision to revoke appellant's PSL status and directed he serve a sixteen-month term of incarceration, beginning when he was taken into custody on November 2, 2023, and ending on March 1, 2025. The panel concurred with the hearing officer's finding appellant violated a condition of his PSL but did not address appellant's

service credit argument. Thereafter, appellant filed an administrative appeal to the full Board.

D.     The Final Agency Decision

On July 31, 2024, the Board issued a final agency decision, affirming the Board panel's decision to revoke appellant's PSL status and impose a sixteen-month term of incarceration. It noted appellant alleged the Board panel failed to consider: (1) he had already served the sentence the Board panel imposed; (2) he should have been awarded "jail credits";[1] (3) the federal court ordered his sentence to be served concurrently to his parole violation in New Jersey; and (4) the Board never attempted to resolve the revocation matter during his "out-of-state incarceration."

The Board stated, "if a defendant is arrested and confined out-of-state on non-New Jersey charges, [they are] not entitled to jail credit for time spent in custody towards th[at] confinement until [they are] held solely on New Jersey charges." Citing State v. Joe, 228 N.J. 125 (2017), it explained appellant was

---

[1] While the Board sometimes referred to the time for which appellant sought credit as "jail credits," appellant asserts he is seeking "prior service credits." "Service credits are awarded . . . for time served on a custodial sentence following the entry of a judgment of conviction," whereas "[j]ail credits are awarded . . . for time served in custody prior to the entry of a judgment of conviction." State v. Njango, 247 N.J. 533, 540 n.1 (2021).

"not entitled to jail credits due to the fact that New Jersey has no control over [his] confinement in another state[,] and even if a detainer is filed timely, New Jersey cannot command a transport of [him] until the out-of-state charges are resolved." Moreover, "[i]f there are federal charges holding [a] defendant in the out-of-state jurisdiction, credit toward the New Jersey charge does not commence until the local charges are resolved." Relying on Carchman v. Nash, 473 U.S. 716 (1985), the Board further explained "probation (and parole) detainers do not fall under the purview of Article III of the Interstate Agreement on Detainers."

Thus, the Board determined the New Jersey parole violation warrant "could not be resolved until [appellant] was released from [f]ederal custody," finding appellant's jail credit argument "to be without merit" and denying his request for credits toward his sixteen-month incarceration term. It affirmed the Board panel's decision to revoke his PSL status and its imposition of a sixteen-month term of incarceration.

II.

On appeal, appellant argues the Board's decision to deny him prior service credit toward his parole violation was arbitrary and capricious because it

A-0154-24

disregarded the federal court's sentencing order and failed to comply with the principles of comity and fundamental fairness.

Appellate review of parole determinations "focuses upon whether the factual findings made by the . . . Board could reasonably have been reached on sufficient credible evidence in the record." Trantino v. N.J. State Parole Bd. (Trantino II), 166 N.J. 113, 199 (2001) (Baime, J., dissenting) (citing Trantino v. N.J. State Parole Bd. (Trantino I), 154 N.J. 19, 24 (1998)). "To a greater degree than is the case with other administrative agencies, the . . . Board's decision-making function involves individualized discretionary appraisals." Id. at 201 (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)).

"We may overturn the . . . Board's decisions only if they are arbitrary and capricious. 'Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances.'" Ibid. (quoting Worthington v. Fauver, 88 N.J. 183, 204-05 (1982)). We consider whether the Board followed the law, there was substantial evidence to support its findings, and, in applying the law to the facts, the Board "clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Trantino I, 154 N.J. at 24 (citing Brady v. Dep't of Pers., 149 N.J. 244, 256 (1997)).

A-0154-24

On questions of law, we owe the Board considerable deference in interpreting its regulations. US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012). An agency's interpretation of its regulations, however, "cannot alter the terms of a legislative enactment nor can they frustrate the policy embodied in [a] statute." Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176, 183 (App. Div. 2011) (alteration in original) (quoting N.J. Ass'n of Realtors v. N.J. Dep't of Env't Prot., 367 N.J. Super. 154, 159-60 (App. Div. 2004)). "Ultimately, reviewing courts are not 'bound by the agency's interpretation of a statute.'" Ibid. (quoting Shim v. Rutgers, 191 N.J. 374, 384 (2007)) (internal quotation marks omitted). This includes instances where "the agency's action offends the United States Constitution or the State Constitution." In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 541 (2016).

PSL may be revoked if a parolee violates a condition of their parole. N.J.S.A. 2C:43-6.4(b); N.J.A.C. 10A:71-7.12(d). When a "parolee has been convicted of a crime committed while on parole, the purpose of the revocation hearing shall be to determine whether, by clear and convincing evidence, good cause exists why the parolee should not be returned to confinement." N.J.A.C. 10A:71-7.12(d).

9

Appellant argues the Board acted arbitrarily in denying him prior service credits toward his sixteen-month parole violation term by disregarding the district court's order that his federal sentence and parole violation run concurrently. He avers the Board should have initiated the parole revocation process while he was serving his federal term, but it instead delayed the process until his release from federal custody, effectively extending his term of incarceration from the eighty-four months intended by the district court to one hundred months. Appellant contends this deprived him of timely relief and the opportunity to challenge the Board's decision.

Citing N.J.S.A. 2C:44-5(c) and Breeden v. New Jersey Department of Corrections, 132 N.J. 457 (1993), appellant contends the decision to impose concurrent or consecutive sentences rests solely with the sentencing court, not the Board; thus, he argues, the Board had no authority to ignore the federal sentencing court's order that his sentences run concurrently. Accordingly, he asserts the Board's refusal to honor the district court's order, and its decision to delay the revocation process until he was released from federal custody, improperly "usurped the court's role as the sentencing authority" and "unfairly extend[ed his] overall custodial term through a de facto consecutive sentence."

A-0154-24

Appellant argues the principle of comity—under which he contends "our state should attempt to honor judicial orders issued in other jurisdictions"—required the Board to enforce the district court's order, particularly given it had the ability to conduct a timely remote revocation hearing at any point during his federal sentence under N.J.A.C. 10A:71-7.13(b). He further contends the Board's arbitrary decision to delay his revocation hearing created "needless uncertainty," which may cause district courts to question whether they must adjust their sentences to attain the "true" sentence they intend to impose.

Additionally, appellant contends the doctrine of fundamental fairness supports awarding him service credits for the period he was held under the New Jersey detainer while serving his federal sentence, as it is the sole remedy for the Board's failure to comply with the federal court's order for concurrent service. Relying on our Supreme Court's decision in State v. Njango, 247 N.J. 533, 537 (2021), which held a defendant was entitled to service credits for time served in prison exceeding the term authorized by his sentence, appellant asserts "the award of [service] credits is the only way to avoid unfair and arbitrary governmental harm in this case."

Appellant distinguishes Joe, relied upon by the Board, stressing that case "related to jail credits for out-of-state pre-sentence custody, not prior service

11

credits for a term imposed for a parole violation."  Thus, because <u>Joe</u> only involved pre-sentence custody, appellant asserts it does not justify the Board's denial of prior service credits or its disregard of the federal court's order.

Following our review of the record, we conclude the Board's findings were not arbitrary, capricious, or unreasonable.  There was clear support in the record appellant violated a condition of his PSL.  We are also unpersuaded by appellant's arguments the Board should have initiated a parole revocation hearing while he was serving his federal sentence and that it erred by denying him service credits for his time served in federal custody.

N.J.A.C. 10A:71-7.13(a) provides a "revocation hearing shall be conducted within [sixty] days of the date the parolee was taken into custody as a parole violator, or, where the parolee was sentenced or committed to a State or county correctional facility within [sixty] days of the date of sentence or commitment."  N.J.A.C. 10A:71-1.1 defines "[s]tate correctional facilities" to "mean all facilities of the New Jersey Department of Corrections as well as all places where those sentenced or committed to the custody of the Department of Corrections may, from time to time, be housed."  Additionally, N.J.A.C. 10A:71-7.13(b) states, a "revocation hearing may be conducted by videoconferencing."

In Board of Trustees of the Youth Correctional Institution Complex v. Smalls, we held an out-of-state parolee was not entitled to a parole revocation hearing in New Jersey while he was confined out-of-state. 172 N.J. Super. 1, 9 (App. Div. 1979). We concluded, "the mere filing of the parole warrant . . . did not trigger [the parolee]'s right to a revocation hearing," reasoning "a parolee's right to such a hearing accrues only after the parole violation warrant is executed and the parolee is taken into custody under the warrant." Id. at 7, 9. Moreover, we noted, the parolee "never asked for an immediate parole revocation hearing while in the custody" of the other jurisdiction, and he "c[ould ]not be permitted to 'sleep on his administrative remedies . . . and then claim prejudice by reason of the passage of time.'" Id. at 8 (quoting Gaddy v. Michael, 519 F.2d 669, 678 (4th Cir. 1975)).

Here, under N.J.A.C. 10A:71-7.13(a)-(b), the Board found the triggering event for assessing the timeliness of a parole revocation hearing is when a parolee is taken into physical custody as a parole violator or committed to a facility within the control of the New Jersey Department of Corrections. Thus, given the Board found appellant was not within the control of the New Jersey Department of Corrections until November 2, 2023, it did not err under Smalls

13

in conducting the revocation hearing after he completed his federal sentence. See 172 N.J. at 9.

Although the Board could have conducted a virtual hearing pursuant to N.J.A.C. 10A:71-7.13(b), appellant was not in the custody of the State for the purposes of N.J.A.C. 10A:71-7.13(a) or under the holding in Smalls, and a federal prison is not a "[s]tate correctional facilit[y]" under N.J.A.C. 10A:71-1.1. See 172 N.J. at 9. Moreover, appellant never requested a parole revocation hearing while incarcerated on his federal charges. Rather, he only raised an issue regarding the Board's delay in adjudicating the parole violation at his hearing. Because appellant failed to act with due diligence in requesting a hearing, we discern no reason to disturb the Board's findings under Smalls. See ibid.

In Breeden, our Supreme Court recognized the sentencing court—not the Board—can weigh the principle of comity and adjust sentences to achieve the intended penal purpose. See 132 N.J. at 469-70. There, after escaping from New Jersey custody and committing a crime in California, the defendant received a California sentence ordered to run concurrent with his uncompleted New Jersey sentence. Id. at 459-62. The Court rejected the defendant's argument the California court had authority to determine whether his sentences

should be served concurrently or consecutively. Id. at 465. It further held "[s]entencing is a uniquely judicial function," reasoning "[n]o statute confers on the Commissioner the authority to determine whether sentences shall be consecutive or concurrent." Id. at 469. The Court explained "[t]he general sentencing purposes of the Code w[ould] best be accommodated if a prisoner claiming credit under principles of comity for time served elsewhere applie[d] to the sentencing court pursuant to the procedures set forth in Rule 3:21-10 (governing reduction of, or change in, sentence)." Id. at 470. It also noted the New Jersey sentencing court could weigh the interests of comity in determining whether the penal purpose of its original sentence would be fulfilled in exercising its authority under Rule 3:21-10. Ibid.

Here, appellant failed to move for relief under Rule 3:21-10 before the sentencing court. Rather, he only belatedly raised the issue before the Board, contrary to the procedure set forth in Breeden. See 132 N.J. at 470. Accordingly, we conclude the Board did not err in revoking appellant's PSL and directing he serve a sixteen-month term of incarceration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

15

A-0154-24